1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                         **DISTRICT OF NEVADA**
8
9   MARCUS WEATHERSPOON,                    )
10                  Petitioner,             )          3:04-cv-0664-RLH-VPC
                                            )
11  vs.                                     )
                                            )          **ORDER**
12  E.K. McDANIEL, *et al.*,                )
                                            )
13                  Respondents.            )
                                            )
14  _____)
15
16          This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by
    Marcus Weatherspoon, a Nevada prisoner.  The action comes before the court with respect to its
17
    merits.  The court will deny the petition.
18
    **I.  Facts and Procedural Background**
19
            The state charged petitioner by amended information with count I, conspiracy to
20
    commit robbery, count II, burglary while in possession of a firearm, count III, robbery with the use of
21
    a deadly weapon, count IV and V, first degree kidnaping with the use of a deadly weapon, count VI
22
    and VII, discharging a firearm at or into a vehicle, count VIII, attempted murder with the use of a
23
    deadly weapon, count IX, battery with the use of a deadly weapon with substantial bodily harm,
24
    count X, battery on an officer with substantial bodily harm, count XI, conspiracy to commit robbery
25
    and/or kidnaping, count XII, first degree kidnaping, count XIII, robbery, and count XIV, grand
26

1   larceny auto.  Exhibits 7.[1]  Prior to trial petitioner moved to dismiss some of the counts, arguing that

2   counts VI, VII, IX and X were multiplicitous and/or were lesser included offenses of one another and

3   count VIII.  Exhibit 5.  Petitioner also filed a motion in limine to prohibit the state from introducing

4   at trial hearsay statements of the alleged co-conspirators.  Exhibit 6.  The trial court denied the

5   motions.  Exhibit 1.

6           A jury trial was held between May 7, 2001 and May 15, 2001.  Exhibits 8-14.  The

7   jury convicted petitioner of counts I-IV, VI-VIII, and X-XIII as charged, and convicted petitioner for

8   count XIV of unlawful taking of a vehicle without consent, a lesser included offense.  Exhibit 15.

9   The trial court sentenced petitioner as follows: count I, a maximum term of 72 months in prison,

10  with parole eligibility in 24 months; count II, a maximum term of 120 months in prison with parole

11  eligibility in 36 months; count III, a maximum term of 120 months with parole eligibility in 36

12  months along with an equal and consecutive term for the use of a deadly weapon; count IV, a life

13  sentence with parole eligibility after 60 months, with an equal and consecutive sentence for the use

14  of a deadly weapon; counts VI and VII, maximum terms of 72 months with parole eligibility in 24

15  months; count VIII, a maximum term of 240 months in prison with parole eligibility in 96 months

16  along with an equal and consecutive sentence for the use of a deadly weapon; count X, a maximum

17  term of 96 months imprisonment with parole eligibility in 36 months; count XI, a maximum term of

18  72 months with parole eligibility in 24 months; count XII, life in prison with parole eligibility after

19  60 months; count XIII, a maximum term of 120 months in prison with parole eligibility in 48 months

20  and count XIV, one year in the county jail.  Exhibit 16.  An amended judgment of conviction was

21  entered on July 24, 2001.  Exhibit 17.

22          Petitioner appealed, arguing (1) the evidence was insufficient to support his

23  convictions for kidnaping, (2) his multiple convictions for the single act of shooting and injuring a

24  police officer were redundant and impermissible, and (3) the exclusion of an African American juror

25

26      [1] The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in
    support of their answer to the petition for a writ of habeas corpus and are located in the record at docket
    # 18, 19, 20, 21 and 22.

by the state violated *Batson*.  Exhibits 18 and 19.  The Nevada Supreme Court affirmed in part and reversed in part, stating the conviction for battery on an officer with substantial bodily harm was impermissibly redundant and therefore could not be upheld.  Exhibit 21.  The court remanded the case, instructing the lower court to enter an amended judgment of conviction.  *Id.*  Remittitur issued on November 7, 2002.  Exhibit 22.  The state trial court entered a second amended judgment of conviction on January 7, 2003 consistent with the Nevada Supreme Court's opinion.  Exhibit 23.

On August 24, 2003, petitioner mailed his state habeas corpus petition to the district court. Exhibit 24.  Petitioner alleged the following grounds: (1) his convictions for discharging a firearm should be vacated as they are redundant to the conviction for attempted murder; (2) there is insufficient evidence to support a conviction for kidnaping; (3) his rights to a fair trial were violated due to the exclusion of the only African American juror; (4) trial counsel failed to hire, consult or question a ballistics expert; (5) trial counsel failed to present evidence in support of his theory of defense; (6) trial counsel failed to object to the testimony of Tamika Beavers; (7) appellate counsel failed to argue on appeal the defense of duress; and (8) the district attorney improperly charged him with multiple offenses based on one single act.  *Id.*

The state district court held an evidentiary hearing on January 15, 2004.  Exhibit 27.  After the hearing the trial court denied petitioner's claims.  Exhibit 28.  Petitioner appealed, and the Nevada Supreme Court affirmed the district court's denial of the claims, but remanded to correct the judgment of conviction as the court had previously reversed the conviction for count IV but the second amended judgment did not reflect the reversal.  Exhibit 30.  Remittitur issued on November 3, 2004.  Exhibit 31.

Petitioner mailed his federal habeas corpus petition on November 15, 2004 (docket #6).  Respondents moved to dismiss four of petitioner's claims, arguing the grounds were conclusory (docket #10).  This court denied the motion to dismiss (docket #16).  Respondents filed an answer and petitioner filed a response to that answer (docket #17 and 23).

**III.  Federal Habeas Corpus Standards**

1    The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal

2    standard for the Court's consideration of this habeas petition:

3           An application for a writ of habeas corpus on behalf of a person in
            custody pursuant to the judgment of a State court shall not be granted
4           with respect to any claim that was adjudicated on the merits in State court
            proceedings unless the adjudication of the claim --

5
            (1)    resulted in a decision that was contrary to, or involved an
6           unreasonable application of, clearly established Federal law, as
            determined by the Supreme Court of the United States; or

7
            (2)    resulted in a decision that was based on an unreasonable
8           determination of the facts in light of the evidence presented in the State
            court proceeding.

9

10   28 U.S.C. §2254(d).

11          The AEDPA "modified a federal habeas court's role in reviewing state prisoner

12   applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

13   given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002).   A state

14   court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28

15   U.S.C. § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the

16   Supreme Court's] cases'" or "'if the state court confronts a set of facts that are materially

17   indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

18   different from [the Supreme Court's] precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)

19   (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

20          A state court decision is an unreasonable application of clearly established Supreme

21   Court precedent "'if the state court identifies the correct governing legal principle from [the Supreme

22   Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'"

23   *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).   The unreasonable application clause

24   "requires the state court decision to be more than incorrect or erroneous"; the state court's

25   application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529

26   U.S. at 409).   *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

4

1    In determining whether a state court decision is contrary to, or an unreasonable

2  application of, federal law, this Court looks to a state court's last reasoned decision.  *See Ylst v.*

3  *Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir.

4  2008) (en banc).

5    Moreover, "a determination of a factual issue made by a State court shall be presumed

6  to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness

7  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

8  **IV.  Discussion**

9    **A.  Ground One**

10    In his first claim for relief petitioner alleges that trial counsel failed to adequately

11  investigate, hire, consult or cross-examine ballistics expert James Krylo, in violation of his 6th

12  Amendment rights.  Petitioner contends that had trial counsel investigated and made sure the police

13  officer's weapon was tested, counsel would have been discovered that the police officer fired a shot

14  at the petitioner.  Petitioner states that the evidence could have been used to impeach the officer's

15  testimony and support his theory of the case.

16    In order to prove ineffective assistance of counsel, petitioner must show (1) that

17  counsel acted deficiently, in that his attorney made errors so serious that his actions were outside the

18  scope of professionally competent assistance and (2) the deficient performance prejudiced the

19  outcome of the proceeding.  *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).

20    Ineffective assistance of counsel under *Strickland* requires a showing of deficient

21  performance of counsel resulting in prejudice, "with performance being measured against an

22  'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

23  *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

24  ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

25  to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

26  5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

1    reasonable professional assistance. *Id.*

2           At the evidentiary hearing the state argued that the ballistics expert did not examine

3    police officer Rossi's weapon to determine whether it had been used.  Exhibit 27 at 3.  Moreover, the

4    state noted that even if the ballistics expert had examined the officer's firearm the expert would not

5    have been able to determine when the gun had been fired, just that it had been fired at some time. *Id.*

6    The state district court determined that counsel was not ineffective as the issue of whether the police

7    officer had fired his gun was not material to the case.  Exhibit 28.  On appeal the Nevada Supreme

8    Court affirmed the district court's denial of the claim, concluding the claim was without merit as trial

9    counsel could not cross-examine the ballistics expert regarding whether Officer Rossi had fired his

10   gun as the expert had not tested the gun.  Exhibit 30.  Moreover, the court found that the state district

11   court's determination that the claim lacked merit was supported by substantial evidence as the

12   firearms expert would not have been able to determine the precise time the weapon was fired. *Id.*

13          The Nevada Supreme Court's conclusion that petitioner's claim was without merit, as

14   even if the firearm had been examined there was no prejudice to the outcome of the case, is not an

15   objectively unreasonable application of *Strickland.*  Furthermore, the state court's factual

16   determination may not be overturned unless this court cannot "reasonably conclude that the finding

17   is supported by the record. *Cook v. Schriro*, 516 U.S. 802, 816 (9th Cir. 2008); *Miller-El v.*

18   *Cockrell*, 537 U.S. 32 (2003).  The factual findings of the Nevada state courts are presumed correct.

19   28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

20   Court's decision was contrary to, or involved an unreasonable application of clearly established

21   federal law.   Moreover, there is no indication that the Nevada Supreme Court's order was

22   unreasonable in light of the evidence presented in the state court.  Ground one will be denied.

23          **B.  Ground Two**

24          In his second claim for relief petitioner alleges that trial counsel was ineffective for

25   failing to obtain or present testimony that would have supported his theory of defense.  Specifically

26   petitioner argues that counsel failed to obtain an affidavit of co-defendant Harris, who purportedly

1    took responsibility for committing the crimes.  Petitioner also contends that counsel failed to

2    introduce letters that were written by himself and Harris at trial.  Finally petitioner asserts that trial

3    counsel failed to call Gloria Banks as a witness.

4                    **1.  Failure to Obtain or Introduce Affidavit of Co-Defendant Harris**

5                    In claim 2(A) claim petitioner argues that trial counsel failed to obtain an affidavit

6    from his co-defendant, Harris, admitting responsibility for the crimes.  Petitioner alleges that Harris

7    took fully responsibility for all the crimes committed but was unwilling to testify at trial because his

8    own trial was still pending.  Petitioner contends that had counsel obtained this affidavit, the jury

9    would have heard that Harris and co-defendant Winn forced petitioner to participate in the crimes by

10   threatening him and his family.

11                   At the evidentiary hearing defense trial counsel Amesbury and the state told the court

12   that such an affidavit would have been hearsay as co-defendant Harris did not testify at petitioner's

13   trial.  Exhibit 27.  The state district court agreed, and denied the claim, stating that any affidavit of

14   Harris would not have been admissible at trial.  Exhibit 28.  The Nevada Supreme Court affirmed the

15   denial of this claim, finding that counsel Amesbury's belief that Harris's affidavit would be

16   inadmissible hearsay was not unreasonable.  Exhibit 30.  Furthermore, the court noted that co-

17   defendant Winn did testify that Harris forced petitioner to participate in the crimes, therefore

18   petitioner could not demonstrate that the outcome of trial would have been different.  *Id.*

19                   Petitioner has not met his burden of proving that the Nevada Supreme Court's

20   determination that no prejudice resulted to the outcome of the trial was an objectively unreasonable

21   application of *Strickland*.  Moreover, the Nevada Supreme Court's order is not an unreasonable

22   determination in light of the evidence produced in the state court proceeding. 28 U.S.C. §

23   2254(d)(2), (e)(1) (presuming state court findings are correct unless this presumption is refuted by

24   clear and convincing evidence).  As the petitioner has not shown that trial counsel's failure to have

25   the hearsay affidavit presented to the jury prejudiced the trial, ground 2(A) will be denied.

26                    **2.  Failure to Introduce Petitioner's and Co-Defendant's Letters**

7

In claim 2(B) petitioner alleges that trial counsel was ineffective for failing to introduce at trial letters he wrote to co-defendant Harris asking Harris not to harm him or his family. Petitioner asserts that these letters would have assisted in proving that he was forced to commit the crimes due to his fear of Harris.

At the evidentiary hearing counsel Amesbury stated that the letters would have prejudiced petitioner's case as they were inflammatory and contained admissions.  Exhibit 27. Moreover, trial counsel told the court he thought petitioner was asking Harris, in the letters, not to testify against him at trial.  *Id.*  Petitioner told the district court that the letters did not contain admissions and could have been used to show that he was afraid Harris would hurt him.  *Id.*  The trial court concluded that trial counsel was not ineffective.  Exhibit 28.  The Nevada Supreme Court affirmed the lower court determination, noting that counsel did not act unreasonably in failing to have the letters introduced into evidence.  Exhibit 30.

The United States Supreme Court has noted that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).  The Nevada Supreme Court's decision that counsel's strategic decision to not introduce the letters as they were more harmful than helpful to the defense is not an unreasonable application of federal law.  Ground 2(B) will be denied.

### 3. Failure to Call Gloria Banks as a Witness

In claim 5(C) petitioner argues that trial counsel failed to call Gloria Banks as a witness.  Petitioner states that Banks was the mother of co-defendant Winn, and knew of Harris's violent nature.  Petitioner contends that her testimony would have corroborated his theory of the case, namely that he was forced to help Harris after being threatened.   The trial court denied the claim, stating that petitioner had failed to identify who Banks was and what she would testify to. Exhibit 28.  On appeal the Nevada Supreme Court affirmed the denial, finding that defense counsel Amesbury had testified at the hearing that he did not call Banks because he did not believe her testimony would have aided in the defense.  Exhibit 30.  The court concluded that petitioner had

1    failed to show that counsel acted ineffectively.  *Id.*

2           As was noted above, strategic decisions after investigating the law and facts are

3    unchallengeable.  *Strickland*, 466 U.S. at 690-91.  Trial counsel testified that he investigated Banks

4    as a witness and made the determination that she would not help the defense.  Exhibit 27.  The

5    Nevada Supreme Court's order on this claim is not unreasonable in light of the evidence produced at

6    the state court proceeding.  28 U.S.C. § 2254(d)(2), (e)(1).  There is no indication that hte state court

7    unreasonably applied federal law.  Ground 5(C) will be denied.

8           **C. Ground Three**

9           Petitioner argues in his third claim that trial counsel was ineffective for failing to

10   object to the testimony of Tamika Beavers.  Petitioner states that Beavers changed her statement

11   after negotiating with the state and receiving a reduced sentence for her testimony.

12          During the evidentiary hearing defense trial counsel told the district court that he did

13   not have a reason to object to Beavers' testimony.  Exhibit 27.  The district court stated that while

14   Beavers changed her statement, that was an issue of credibility for the jury to determine and not a

15   basis to prevent Beavers from testifying.  *Id.*  The court also noted in its order that trial counsel

16   properly drew attention to Beavers bias during the trial.  Exhibit 28.  The Nevada Supreme Court

17   affirmed the denial of this claim, first noting that Beavers was extensively cross-examined by

18   defense counsel regarding her agreement with the state.  Exhibit 30.  Moreover, the court found that

19   petitioner had not articulated any valid bases on which counsel should have objected to the

20   testimony.  *Id.*  The court concluded that trial counsel was not ineffective.  *Id.*

21          The Nevada Supreme Court's decision is not an objectively unreasonable application

22   of *Strickland*.  Petitioner failed to show that trial counsel was ineffective light of *Strickland*, as

23   petitioner has not shown that counsel had a valid basis to object to Beavers' testimony.  Moreover,

24   petitioner's claim is belied by the record.  Trial counsel did move to prevent testimony from the co-

25   conspirators or co-defendants in the case, and the trial court denied that motion.  Exhibit 6.  Ground

26   three will be denied.

1   **D. Ground Four**

2     In his fourth claim for relief petitioner argues that appellate counsel was ineffective

3 for failing to submit the ground or argument of duress (that he was forced to commit the crimes) on

4 appeal.  "Claims of ineffective assistance of appellate counsel are reviewed according to the standard

5 announced in *Strickland*."  *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).

6     Defense counsel told the state district court that he did not believe this was an

7 appealable issue.  Exhibit 27.  Counsel further stated that the defense of duress was a question of fact

8 for the jury to determine, and the jury did not believe this defense.  *Id.*  The district court determined

9 that the issue did not have a reasonable probability of success on appeal.  Exhibit 28.  The Nevada

10 Supreme Court affirmed the denial, noting that petitioner's claim was without merit.  Exhibit 30.

11 The court stated that petitioner testified at trial that he was forced to commit the crimes but the jury

12 did not believe the defense.  *Id.*  The court concluded there was not a reasonable probability that the

13 issue would have succeeded had counsel raised it on appeal.

14     The Nevada Supreme Court's finding that there was no reasonable probability of

15 success had the issue been raised on appeal is not objectively unreasonable, and is also entitled to a

16 presumption of correctness.  28 U.S.C. § 2254(e)(1).  Petitioner has not demonstrated prejudice as is

17 required under *Strickland*.  The state court's ruling was not contrary to, or an unreasonable

18 application of, clearly established federal law, as determined by the United States Supreme Court.

19 The court will deny ground four.

20   **E.  Grounds Five, Six and Seven**

21     In his fifth claim petitioner alleges that his due process rights were denied when he

22 was charged with multiple offenses for one single act.   Specifically petitioner argues that counts VI,

23 VII and IX were lesser included offenses of count VIII, and should have been dismissed along with

24 count X.   In ground six petitioner contends that there was insufficient evidence to support the

25 conviction for kidnaping, as the movement of victim Davis was incidental to the theft of the vehicle.

26 In his seventh ground for relief petitioner asserts that the state's exclusion of the only African

1    American juror violated his Fourteenth Amendment rights.

2           Petitioner raised these same claims on direct appeal.   The Nevada Supreme Court

3    determined that the charge of battery on an officer with substantial bodily harm was impermissibly

4    redundant and reversed and remanded for the conviction for that count to be overturned.   Exhibit 21.

5    Moreover the court found that sufficient evidence did exist to support the conviction for kidnaping

6    victim Davis, as petitioner forced the victim into the car instead of only taking the vehicle, therefore

7    the movement of the victim was not incidental to the theft of the vehicle.   *Id.*   Finally, the court

8    determined that the district court did not err in determining that the prosecution had not committed a

9    *Batson* violation when excluding an African American juror as the prosecutor had articulated race-

10   neutral reasons for excluding the juror.   *Id.*

11          Petitioner then reargued these claims in his state habeas petition.   The district court found

12   the claims to be barred by the law of the case doctrine as the issues were previously decided on direct

13   appeal.   Exhibit 28.   The Nevada Supreme Court affirmed the denial of these claims, stating that the

14   district court did not err in denying the claims as the court has previously considered the merits of

15   the claims on direct appeal.   Exhibit 30.   The court concluded that it was barred from considering the

16   claims due to the law of the case doctrine.   *Id.*

17          A court is precluded from "reexamining an issue" that was "previously decided by the

18   same court, or a higher court, in the same case."   *Hydrick v. Hunter*, 500 F.3d 978, 986 (9th Cir.

19   2007) (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)).   The Nevada Supreme

20   Court's determination that it was barred from reevaluating claims five, six and seven as they had

21   already been considered on the merits previously is not an objectively unreasonable application of

22   federal law.   Grounds five, six and seven will be denied.

23   **V.  Certificate of Appealability**

24          In order to proceed with an appeal from this court, petitioner must receive a certificate

25   of appealability.   28 U.S.C. § 2253(c)(1).   Generally, a petitioner must make "a substantial showing

26   of the denial of a constitutional right" to warrant a certificate of appealability.   *Id.*   The Supreme

11

1   Court has held that a petitioner "must demonstrate that reasonable jurists would find the district

2   court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

3   473, 484 (2000).

4         The Supreme Court further illuminated the standard for issuance of a certificate of

5   appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

6         We do not require petitioner to prove, before the issuance of a COA, that
        some jurists would grant the petition for habeas corpus.  Indeed, a claim

7         can be debatable even though every jurist of reason might agree, after the
        COA has been granted and the case has received full consideration, that

8         petitioner will not prevail. As we stated in *Slack*, "[w]here a district court
        has rejected the constitutional claims on the merits, the showing required

9         to satisfy § 2253(c) is straightforward: The petitioner must demonstrate
        that reasonable jurists would find the district court's assessment of the

10        constitutional claims debatable or wrong."

11   *Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

12         The court has considered the issues raised by petitioner, with respect to whether they

13   satisfy the standard for issuance of a certificate of appeal, and the court determines that none meet

14   that standard.  The court will therefore deny petitioner a certificate of appealability.  Accordingly, the

15   court will deny petitioner a certificate of appealability.

16         **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus

17   (docket #6) is **DENIED**.

18         **IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT**

19   **ACCORDINGLY.**

20         **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

21   **APPEALABILITY**.

22

23         Dated this ___12th___ day of June, 2008.

24

25                                        CHIEF UNITED STATES DISTRICT JUDGE

26